UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
TODD C. BANK,

                        Plaintiff,

      -against-
                                                        NOT FOR PUBLICATION
UBER TECHNOLOGIES, INC.,                                **MEMORANDUM & ORDER**
                                                        16-CV-5845 (CBA) (VMS)
                        Defendant.
-------------------------------------------------------x
**AMON, United States District Judge:**

On October 19, 2016, plaintiff Todd C. Bank commenced the instant action by filing a complaint with this Court asserting claims under New York General Business Law ("GBL") § 399-p and the Class Action Fairness Act ("CAFA") based on robotic telephone calls Bank received from defendant Uber Technologies, Inc. (D.E. # 1 ("Compl.").) Defendant now moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) arguing that, *inter alia*, Bank's claims are barred by the doctrine of *res judicata* or, in the alternative, that Bank lacks Article III standing. As set forth below, because the Court finds that Bank lacks Article III standing, defendant's motion is granted.

## BACKGROUND

Bank alleges that he received robotic telephone calls on July 16, 2015, July 18, 2015, July 20, 2015, and July 21, 2015 from defendant regarding Mayor Bill de Blasio's proposed bill that would have restricted the number of for-hire vehicles that could be licensed to operate in New York City. The first three calls Bank received used the following script:

> Hi. It's Molly with Uber, and we need your help. Uber ended the days when you couldn't get a ride home because cabs didn't want to leave Manhattan. Now Mayor de Blasio is trying to bring the bad old days back because his millionaire taxi donors are telling him to. But why on earth would your Council Member ever consider voting for something like this? They should stand up for you, not take orders from the mayor. Your Council Member

1

is sponsoring this bill, and we need your voice.  Please call your council member, and tell them to take their names off Mayor de Blasio's anti-Uber bill.  Because you, and all New Yorkers, deserve reliable transportation.  Paid for by Uber 212 257-1745.

(Compl. ¶ 16.)  Similarly, the fourth call Bank received used the following script:

Hi. It's Derrick with Uber, and we need your help.  Uber ended the days when New Yorkers had to worry about being able to find a reliable ride home; but now, Mayor de Blasio wants to cap the number of drivers that can partner with us, ending Uber as you know it, just because his millionaire taxi donors are telling him to.  The Daily News has called de Blasio's cap on Uber quote disingenuous and a bad deal for New Yorkers.  Please call your council member and tell them to oppose the anti-Uber bill, because they should look out for you, not for the mayor's rich donors.  Paid for by Uber 212 257-1745.

(Id. ¶ 17.)  Bank alleges that he received the calls on his "residential telephone number," and that the calls were made with "automatic equipment," which played a prerecorded message once the calls were answered.  (Id. ¶¶ 10–15.)

On August 18, 2015, Bank filed a complaint on behalf of himself and other similarly situated individuals in the United States District Court for the Eastern District of New York asserting that defendant violated both the federal Telephone Consumer Protection Act ("TCPA") and GBL § 399-p through the use of the unsolicited robotic telephone calls.  On December 11, 2015, then District Judge John Gleeson granted a motion to dismiss filed by defendant, finding that the calls at issue were "unmistakably political in nature" and therefore exempt from the TCPA and declining to exercise supplemental jurisdiction over the GBL § 399-p claim.  (See Bank v. Uber Techs., Inc., No. 15-CV-4858 ("Bank I"), D.E. # 18.)  That same day, Bank filed both a motion for reconsideration and an appeal to the Second Circuit.

In his reconsideration motion, Bank challenged the district court's decision to not exercise supplemental jurisdiction over the GBL § 399-p claim, arguing that the district court had original jurisdiction over that claim under CAFA.  The district court denied the motion, reasoning that the district court had already "fully considered and rejected" Bank's arguments in connection with defendants' motion to dismiss.  (See Bank I, No. 15-CV-4858, D.E. dated March 8, 2016.)  Further,

2

the district court held that Bank's reconsideration motion failed on the merits because GBL § 399-p "authorizes only *individuals* the right of action; it does not provide for a class action mechanism." (Id.)

On appeal, Bank argued again that the district court erred in declining to exercise supplemental jurisdiction over the GBL § 399-p claim because original jurisdiction existed under CAFA. Bank also argued that the district court's order denying his motion for reconsideration "did not address [his] allegation of original jurisdiction" over the GBL § 399-p claim and that the district court wrongly decided to apply GBL § 399-p's substantive prohibition on bringing class actions in federal court. In response, defendant contended that the district court's decision was proper, arguing that GBL § 399-p's own language prohibits class actions under CAFA in federal court, and, in the alternative, that Bank failed to meet CAFA's amount-in-controversy requirement.

On October 18, 2016, the Second Circuit affirmed the district court's dismissal of Bank I in its entirety and rejected Bank's arguments concerning federal court jurisdiction over the GBL § 399-p claim. See Bank v. Uber Techs., Inc., 669 F. App'x 579, 579 (2d Cir. 2016). The court of appeals explained that "[h]aving dismissed appellant's only federal claim, the district court properly declined to exercise supplemental jurisdiction over [the] state-law claim. Because there is no other basis for federal jurisdiction over appellant's GBL claim, the district court's dismissal was proper." Id. (citation omitted). That same day, Bank filed the instant action, which challenges the same telephone calls based on GBL § 399-p and CAFA. Bank does not allege any violation of the TCPA.

## STANDARD OF REVIEW

When considering motions to dismiss under either Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction or Rule 12(b)(6) for failure to state a claim, the Court ordinarily accepts all allegations in the complaint as true and draws reasonable inferences

in favor of the nonmovant.  See Atterbury v. U.S. Marshals Serv., 805 F.3d 398, 402 (2d Cir. 2015).  A court dismisses an action under Rule 12(b)(6) if the complaint lacks "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A complaint must offer more than "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555, 557).  In deciding a motion to dismiss, the Court accepts all well-pleaded allegations as true, construes the allegations in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor.  Gonzalez v. Hasty, 802 F.3d 212, 219 (2d Cir. 2015).

A court dismisses an action under Rule 12(b)(1) "if the court lacks the statutory or constitutional power to adjudicate it."  Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L., 790 F.3d 411, 416–17 (2d Cir. 2015) (internal quotation marks and citation omitted). Because standing "'is an essential and unchanging part of the case-or-controversy requirement of Article III['] . . . [i]f a plaintiff[] lack[s] Article III standing, a court has no subject matter jurisdiction to hear their claim," in which case the Court may grant a motion to dismiss under Rule 12(b)(1).  Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).  A challenge to standing may also be brought under Rule 12(b)(6) for failure to state a claim.  See Thompson v. Cty. of Franklin, 15 F.3d 245, 247 (2d Cir. 1994).

## DISCUSSION

### I.    *Res Judicata*

To determine whether *res judicata* precludes a subsequent action, courts assess whether: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action

4

were, or could have been, raised in the prior action." <u>Monahan v. N.Y. City Dep't of Corr.</u>, 214

F.3d 275, 285 (2d Cir. 2000). Although dismissal for lack of subject matter jurisdiction is generally

not "an adjudication on the merits," a finding of lack of subject matter jurisdiction is still *res*

*judicata* as to that particular issue in subsequent actions between the parties. <u>See</u> <u>Zoriano Sanchez</u>

<u>v. Caribbean Carriers Ltd.</u>, 552 F.2d 70, 72 (2d Cir. 1977). Accordingly, "[i]t has long been the

rule that principles of *res judicata* apply to jurisdictional determinations—both subject matter and

personal." <u>Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee</u>, 456 U.S. 694, 702

n.9 (1982). "A party that has had an opportunity to litigate the question of subject-matter

jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment." <u>Id.</u>

Bank does not dispute that the issue now before the Court is the same issue as was before

the district court and the Second Circuit in <u>Bank I</u>—i.e., whether there is original subject matter

jurisdiction over Bank's GBL § 399-p claim. Bank contends, however, that the instant action is

not barred by *res judicata* because the Second Circuit did not specify whether its affirmance of the

district court's finding of a lack of jurisdiction in <u>Bank I</u> was based upon GBL § 399-p's bar against

class actions or Bank's failure to meet the amount-in-controversy requirement to establish CAFA

jurisdiction, and that accordingly, neither reasoning can have a preclusive effect upon the present

action. (D.E. # 21 at 7.) The Court agrees. "It is a well-established principle of federal law that

if an appellate court considers only one of a lower court's alternative bases for its holding,

affirming the judgment without reaching the alternative bases, only the basis that is actually

considered can have any preclusive effect in subsequent litigation." <u>Niagara Mohawk Power Corp.</u>

<u>v. Tonawanda Band of Seneca Indians</u>, 94 F.3d 747, 754 (2d Cir. 1996). Consequently, if a court

does not specify any basis upon which it affirms a lower court's decision, then no basis can have

a preclusive effect. Because the court of appeals in <u>Bank I</u> did not specify the basis upon which

it held that the district court lacked jurisdiction over Bank's GBL § 399-p claim, it is unclear whether (1) the Second Circuit agreed with Judge Gleeson's finding that § 399-p precludes class actions or (2) the court independently found that the amount-in-controversy requirement for CAFA jurisdiction was not met.[1] Because a failure to meet an amount-in-controversy requirement can be fixed by repleading, and because such a finding was a possible basis for the Second Circuit's affirmance in Bank I, the Court accordingly does not find that *res judicata* bars the instant action.

## II.   Standing

Defendant contends that even if the instant action is not barred by *res judicata*, the Court lacks subject matter jurisdiction based on CAFA over Bank's claim.  Bank contends that the alleged limitation in GBL § 399-p's text that defendant claims prohibits class actions does not in reality prohibit class actions under CAFA.  Even if the Court were to assume that CAFA jurisdiction is permitted for § 399-p claims, however, the Court finds that Bank's claims fail for lack of standing.

Standing is an "essential and unchanging part of the case-or-controversy requirement of Article III" of the United States Constitution. Lujan, 504 U.S. at 560. The standing inquiry "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." Warth v. Seldin, 422 U.S. 490, 498 (1975). At a minimum, in order to have constitutional standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).

---

[1] Defendant contends that the Second Circuit could not have affirmed based on the amount-in-controversy requirement because the district court did not dismiss on that basis. Defendant's argument fails, however, because the court of appeals had an "independent obligation to examine subject matter jurisdiction." See Thompson, 15 F.3d at 248; see also Abramov v. I.C. Sys., Inc., 65 F. Supp. 3d 323, 325 (E.D.N.Y. 2014).

6

In <u>Spokeo, Inc. v. Robins</u>, the Supreme Court clarified that injury to a legal interest must be "concrete" as well as "particularized" to satisfy the injury-in-fact element of standing. <u>Id.</u> at 1548. To be "concrete," an injury "must actually exist," meaning it must be "real, and not abstract." <u>Id.</u> The Court's ruling further clarified that a "violation of" a given statute's "procedural requirements may result in no harm," which would consequently result in the plaintiff having failed to suffer a concrete injury. <u>Id.</u> at 1550. As an example, the Court referenced the Fair Credit Reporting Act ("FCRA")—the subject matter of the <u>Spokeo</u> litigation—which, on its face, creates a civil cause of action where, *inter alia*, a consumer reporting agency provides inaccurate information about a consumer. The Court noted that "not all inaccuracies cause harm or present any material risk of harm." <u>Id.</u> The Court reasoned, "An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." <u>Id.</u>

In cases decided after <u>Spokeo</u>, several circuits have addressed causes of action in which plaintiffs claimed "informational injuries"—i.e., injuries sustained due to a defendant's failure to provide information mandated by statute—which is what Bank claims to have suffered in the instant action. These courts have noted that injuries-in-fact do not need to be "tangible" in order to be concrete, and have further explained:

> An "informational injury" is a type of intangible injury that can constitute an Article III injury in fact. <u>Fed. Election Comm'n v. Akins</u>, 524 U.S. 11, 24 (1998); <u>see also</u> <u>Pub. Citizen v. U.S. Dep't of Justice</u>, 491 U.S. 440, 449 (1989). However, a statutory violation alone does not create a concrete informational injury sufficient to support standing. <u>See</u> <u>Spokeo</u>, 136 S. Ct. at 1549. Rather, a constitutionally cognizable informational injury requires that a person lack access to information to which he is legally entitled and that the denial of that information creates a "real" harm with an adverse effect.

<u>Dreher v. Experian Info. Sols., Inc.</u>, 856 F.3d 337, 345 (4th Cir. 2017). In <u>Friends of Animals v. Jewell</u>, the D.C. Circuit held that a plaintiff suffers a concrete informational injury where he is denied access to information required to be disclosed by statute, and he "suffers, by being denied

access to that information, the type of harm Congress sought to prevent by requiring disclosure." 828 F.3d 989, 992 (D.C. Cir. 2016) (emphasis added); see also Dreher, 856 F.3d at 346 ("[I]t would be an end-run around the qualifications for constitutional standing if any nebulous frustration resulting from a statutory violation would suffice as an informational injury.").

Applying this standard to the instant action, the Court finds that Bank fails to establish a concrete injury. Although Bank accurately claims that the statute was violated because the calls did not include Uber's address, Bank fails to allege that he suffered any harm as a result of that omission of information. Bank does not allege, for example, that he would have used Uber's address but for the failure to provide it on the calls, nor does he allege that the failure to provide the address deceived him in any way.

Bank argues that he has alleged common law harms such as nuisance or invasion of privacy. Although these types of injuries have ordinarily been actionable under common law, Bank's only cause of action is based on an alleged violation of GBL § 399-p. As Bank admits in his opposition to defendant's motion to dismiss, GBL § 399-p's purpose is to provide call recipients with certain information about the entity causing the call to be made. In other words, GBL § 399-p permits unsolicited calls using automatic dialing systems, provided that the caller discloses its name, telephone number, and address. Accordingly, nothing in GBL § 399-p's statutory language—or in its legislative history—indicates that the purpose of GBL § 399-p is to protect call recipients from the harms that Bank now alleges. Thus, even assuming that Bank sufficiently alleged an "invasion of privacy" or "nuisance" injury, those injuries would not constitute "the type of harm [the New York legislature] sought to prevent by requiring disclosure," of the caller's address, see Friends of Animals, 828 F.3d at 992, and cannot serve as a basis for Bank's standing to assert a violation of GBL § 399-p. Moreover, even assuming that the harm the

8

legislature sought to prevent included injuries such as nuisance and invasion of privacy, Bank would still fail to meet Article III standing requirements, as his injuries are not traceable to the statutory violation. Even if the calls of which Bank complains had included the defendant's address, Bank still would have received the calls, which is what Bank claims actually caused the alleged injuries.

To be clear, that Bank does not allege a concrete injury under Article III "does not mean that New York law does not create a right that, when violated, could form the basis of a cause of action in a court of New York." See Nicklaw v. Citimortgage, Inc., 839 F.3d 998, 1003 (11th Cir. 2016) (finding a lack of standing to bring a claim under New York Real Property Law). But Bank chose to sue defendant "in federal court, and the requirement of concreteness under Article III is not satisfied every time a statute creates a legal obligation and grants a private right of action for its violation." Id. (citing Spokeo, 136 S. Ct. at 1550). "A plaintiff must suffer some harm or risk of harm from the statutory violation to invoke the jurisdiction of a federal court." Id.

For these reasons, the Court dismisses Bank's GBL § 399-p claims for lack of standing.

## CONCLUSION

Because Bank lacks standing, the Court grants defendant's motion to dismiss with prejudice. The Clerk of Court is directed to enter judgment accordingly and close the case.

SO ORDERED.

Dated:   July 7, 2017
Brooklyn, New York

s/ Carol Bagley Amon
_____
Carol Bagley Amon
United States District Judge

9